**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

| | | |
|---|---|---|
| MONTRELL DASHONE VENTRY | ) | |
| | ) | |
| ADC # 141556 | ) | **Case No. 5:10-CV-00233 JMM-JTK** |
|     Petitioner, | ) | |
| v. | ) | |
| | ) | |
| RAY HOBBS, Director, Arkansas | ) | |
| Department of Correction | ) | |
|     Respondent. | ) | |

## PROPOSED FINDINGS AND RECOMMENDATIONS

### Instructions

The following recommended disposition has been sent to United States District Court Judge James M. Moody.   Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## Disposition

BEFORE THE COURT is the Petition for Writ of Habeas Corpus filed by Montrell Dashone Ventry on August 12, 2010. (Doc. No. 2).  A response was filed by Respondent Ray Hobbs on September 7, 2010. (Doc. No. 8).  Petitioner filed a reply on May 16, 2011. (Doc. No. 17).  After reviewing the Parties' briefing and the available evidence, the Court finds that Petitioner's claims should be DISMISSED.

## Background

On April 9, 2008, Petitioner was convicted of capital murder and aggravated robbery in the Saline County (Arkansas) Circuit Court, and he was sentenced to life without parole and ten years respectively.   He is currently serving his sentence in the Arkansas Department of Correction.  Petitioner directly appealed his conviction to the Arkansas Supreme Court, but this appeal was denied on May 21, 2009. *Ventry v. State*, 2009 Ark. 300.  Petitioner subsequently

petitioned for a writ of certiorari in the Supreme Court of the United States on November 12, 2009, but this was denied on February 22, 2010. *Ventry v. Arkansas*, 130 S. Ct. 1531 (2010). Petitioner did not seek postconviction relief pursuant to Ark. R. Crim. P. 37.1, but he alleges this was due to state interference and denial of access to the courts (Pet'r's Reply 1, Doc. No. 17).

### Discussion

Petitioner requests relief pursuant to 28 U.S.C. § 2254, alleging that the trial court erred when it (1) failed to grant his directed-verdict motion, (2) failed to suppress his statement, (3) failed to transfer his case to juvenile court and to grant extended juvenile jurisdiction designation, (4) admitted a police officer's comment as part of the appellant's recorded statement to police, (5) admitted a statement by Sultannah Saddiq, (6) allowed a transcript of the taped statement to be passed to the jurors to read while the tape was played, and (7) overruled his objection to the prosecutor's appealing to jurors' sympathy in closing arguments. These are the same seven grounds that were raised during Petitioner's appeal to the Arkansas Supreme Court, but Petitioner now adds an eighth claim, which argues that he received ineffective assistance of counsel.  Respondent contends that Petitioner's claims are procedurally defaulted and meritless.

### I.      Whether Petitioner's Claims are Procedurally Defaulted

A habeas petitioner who cannot present his federal claims in state court due to untimeliness or some other state procedural hurdle meets the technical requirements for exhaustion because there are no longer any state remedies that are available to him. *Grass v. Reitz*, 643 F.3d 579, 584 (8th Cir. 2011) (citing *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)).  "However, that petitioner's procedural default may constitute an 'independent and adequate state ground' barring federal habeas relief absent a showing of either cause and prejudice or actual innocence." *Id.* (internal citations omitted).  "[W]e ask not only whether a

prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.,* whether he has fairly presented his claims to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  To meet this fair presentation requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845.  "A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims." *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (citing *O'Sullivan*, 526 U.S. at 848).

### A. Petitioner's Original Seven Claims

Respondent contends that Petitioner's first seven claims are procedurally defaulted because he failed to specifically reference federal law during his appeal to the Arkansas Supreme Court. "[W]e traditionally demand that a habeas petitioner have presented 'the same legal theories and factual bases to the state courts.'" *Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995) (quoting *Pollard v. Armontrout*, 16 F.3d 295, 297 (8th Cir. 1994)).  "At minimum, though, the petitioner during direct appeal must have explicitly referred the state courts to the United States Constitution or federal case law." *Id.* (citing *Luton v. Grandison*, 44 F.3d 626, 628 (8th Cir. 1994)); *see also Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam) (holding that state courts "must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution"); *Carney v. Fabian*, 487 F.3d 1094, 1096-97 (8th Cir. 2007) (holding that prisoner did not satisfy presentment requirement because he "did not specifically assert a due process violation, refer to the United States Constitution, or cite a relevant federal constitutional case"); *McDougald v. Lockhart*, 942 F.2d 508, 510 (8th Cir. 1991) ("Explicit

citation to the Constitution or to a federal case is necessary for fair presentation of a constitutional claim in state court.").

The only segment of Petitioner's appellate brief that contained any references to federal law was the portion pertaining to his fifth argument, which dealt with the admission of Sultannah Saddiq's statement.   However, Petitioner's first argument attacked the sufficiency of the evidence at trial, and the Eighth Circuit has held that "[a]ny challenge to the sufficiency of the evidence to convict in a state prosecution is necessarily a due process challenge to the conviction." *Satter v. Leapley*, 977 F.2d 1259, 1262 (8th Cir. 1992) (citing *Jackson v. Virginia*, 443 U.S. 307, 322 (1979)).   Accordingly, the Court finds that Petitioner's first and fifth claims were the only claims that were exhausted.

Because five of Petitioner's original seven claims were defaulted in state court, federal habeas review of these claims is barred unless he can 1) show cause for the defaults and actual prejudice as a result of the alleged constitutional violations or 2) demonstrate that failure to consider these claims will result in a fundamental miscarriage of justice. *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011).   However, Petitioner does not argue that he can show cause and prejudice. "Nor does he contend that enforcing the procedural default rule would result in 'a miscarriage of justice' by denying relief to a prisoner who is 'actually innocent,' that [this] procedural requirement is not firmly established and regularly followed, or that the state ground is otherwise inadequate." *Welch v. Lund*, 616 F.3d 756, 760 (8th Cir. 2010) (internal citations omitted).

### B.  Petitioner's New Ineffective Assistance of Counsel Claims

Petitioner now raises an additional eighth ground for relief for the first time.  He alleges he received ineffective assistance of counsel, but he did not file a motion for a new trial or raise

this argument during his direct appeal. *Rackley v. State*, 267 S.W.3d 578, 581 (Ark. 2007) ("[A]n ineffective-assistance argument can be raised on direct appeal, but it may only be done if 1) the issue was first raised during trial or in a motion for new trial, and 2) the facts and circumstances were fully developed either during trial or during other hearings . . . ."). In such circumstances, the "proper remedy to challenge the adequacy of an attorney's representation is a petition for postconviction relief" under Rule 37. *Carrier v. State*, 647 S.W.2d 449, 450 (Ark. 1983). However, no Rule 37 petition was ever filed. Thus, Petitioner failed to exhaust his ineffective assistance claims,[1] and his failure to comply with Arkansas's procedural rules is an independent and adequate state ground barring federal consideration.

Petitioner alleges he was unable to file a Rule 37 petition due to state interference. In particular, Petitioner maintains that he was denied access to legal materials because he was placed in administrative segregation during the entire time that he could have filed a Rule 37 petition. The mandate in Petitioner's direct appeal issued on June 9, 2009, so any petition would have been due sixty days later on August 10, 2009.[2] Ark. R. Crim. P. 37.2. Based on documents from the Arkansas Department of Correction, it appears that Petitioner was placed in administrative segregation on February 25, 2009, and that he was not released until August 13, 2009. (Pet'r's Reply Exs. 1-2, Doc. No. 17). He was apparently segregated because he was deemed to be a threat to the security and good order of the institution. *Id.* at Ex. 1.

Petitioner's argument is one of cause and prejudice, but he has failed to establish cause. First, it is unclear that Petitioner ever requested legal materials or that any such request was

---

[1]

 "[W]e require habeas petitioners to present to the state courts 'the same specific claims of ineffective assistance made out in the habeas petition.'"*Wyldes v. Hundley*, 69 F.3d 247, 253 (8th Cir. 1995) (quoting *Tippitt v. Lockhart*, 903 F.2d 552, 554 (8th Cir. 1990)).

[2]

 Sixty days would have actually ended on August 8, 2010, but that was a Saturday.

denied.  All that has been demonstrated to the Court is that he was in administrative segregation during the sixty-day window for appeal.  His extremely vague and conclusory allegation fails to sufficiently demonstrate a causal relationship between his segregation and his failure to file a timely petition.  Second, "'cause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  It seems unlikely that Petitioner's placement in administrative segregation for nearly six months was something that was completely external to him, and Petitioner neither disputes the accuracy of the prison officials' assessment nor the necessity of their decision to segregate.[3]  The Court declines to adopt Petitioner's apparent view that administrative segregation establishes cause and prejudice *per se*.  Third, there is no evidence that Petitioner attempted to bring these issues to the state courts in a belated manner and explain his alleged inability to file a petition due to state interference.  Alternatively, he could have filed a petition during the appropriate time and subsequently requested a stay, leave to amend, or both.  Thus, the Court finds that Petitioner's claims of ineffective assistance of counsel are procedurally barred.[4]

---

[3]

 Although *Lewis v. Casey* involved claims under § 1983, it is worth noting that the Supreme Court held that routine delays in receiving legal materials or legal assistance for lockdown prisoners were "not of constitutional significance, even where they result in actual injury," as long as those delays were "the product of prison regulations reasonably related to legitimate penological interests." 518 U.S. 343, 361-62 (1996).

[4]

 In any event, Petitioner's arguments are primarily speculative and conclusory. He has failed to show both 1) "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and 2) "that **the deficient performance prejudiced the defense" so seriously** that it "deprive[d] [him] of a fair trial, a trial whose result [wa]s reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Whitehead v. Dormire*, 340 F.3d 532, 537 (8th Cir. 2003). Further, Petitioner's failure to file any petition at all means he cannot avail himself of the exception created by *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) (holding that inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial).

## II.    Petitioner's Remaining Claims

For the reasons discussed above, the only claims that may be appropriately considered by the Court are Petitioner's arguments that 1) there was insufficient evidence to support the verdict and 2) the statement of Sultannah Saddiq should not have been admitted.  Federal courts may only overturn a state adjudication through habeas if it resulted in a decision that was 1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or 2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"A state court decision is 'contrary to' clearly established federal law if it reaches a conclusion opposite that of the Supreme Court on a question of law, or reaches a decision contrary to the Supreme Court on materially indistinguishable facts." *Arnold v. Dormire*, 675 F.3d 1082, 1085 (8th Cir. 2012) (citing *Wiliams v. Taylor,* 529 U.S. 362, 405 (2000)).  "A state court decision involves an 'unreasonable application' when it identifies the correct legal rule, but unreasonably applies it to the facts. 'A state court's application of clearly established federal law must be objectively *unreasonable*, not merely incorrect, to warrant the granting of a writ of habeas corpus.'" *Id.* (citing *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011)).  A state court's "determination of a factual issue . . . shall be presumed to be correct," and petitioners bear "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254 (e)(1).

The scope of review for Petitioner's claim regarding the sufficiency of evidence at trial "is extremely limited." *Whitehead*, 340 F.3d at 536.  This is because the Court is limited to determining "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." *Jackson*, 443 U.S. at 319. Petitioner was convicted by a jury of capital murder and aggravated robbery, and his conviction was upheld by the Arkansas Supreme Court. The Court will not attempt to summarize all of the facts that were presented to the jury or recreate the Arkansas Supreme Court's four-page recitation of the evidence because a brief discussion of the evidence is sufficient to demonstrate that the standard established by *Jackson* was satisfied.

On August 5, 2007, Eddie Dixon and his cousin, Nicholas Jones, drove to Benton, Arkansas to meet Sultannah Saddiq, a girl Dixon had met on the internet. Shortly after arriving in Benton, Dixon phoned Sultannah, and she gave him directions to meet her. These directions led Jones and Dixon to a path near a warehouse where three males with guns jumped out of some nearby bushes and robbed the two. Jones was shot in the head during the course of the robbery, and he eventually died from pneumonia that was caused by the bleeding.

The next day, Petitioner was pulled over while driving the car that was stolen in the robbery. During the course of that stop, Petitioner attempted to flee on foot and sang about blowing someone's head off. The gun that was used to shoot Jones was found in the glove compartment of the stolen car that Petitioner was driving. During the police interrogation that followed, Petitioner admitted to shooting Jones during the robbery. His admission was video recorded and played for the jury.

Petitioner essentially contends that this evidence was insufficient because his fingerprints were not on the gun, the gun was not in his possession because it was found in the glove compartment, he never admitted to robbing the victims, there were no phone calls obtained to show Dixon's call to Sultannah, and Dixon testified that he did not see any of the robbers' faces. Petitioner did admit to shooting Jones, and it is undisputed that Jones was shot during the

9

robbery.  Thus, it is of little consequence that Petitioner did not admit to the robbery.  The other points raised by Petitioner are meritless, and it is clear that a rational juror could have found that the essential elements of capital murder[5] and aggravated robbery[6] were established beyond a reasonable doubt.

Petitioner's final argument concerns the trial court's admission of a statement made by Sultannah.  After Jones had been shot, he stumbled to a nearby house and received assistance from its occupants.  When the police arrived, one of the occupants, Briana Higgs, informed them that she knew Sultannah.  The police then asked Briana to call Sultannah, but there was no answer.  Sultannah eventually returned Briana's call, and Briana asked her if she knew the victim.  Sultannah replied that she did not and hung up.  Sultannah eventually called back and asked what happened. Briana then explained that someone had been shot, and Sultannah asked if the victim died. The state courts reasoned that Sultannah's statements to Briana were not hearsay because Sultannah was a co-conspirator, and her statements were made "during and in furtherance of the conspiracy." Ark. R. Evid. 801(d)(2)(v); Fed. R. Evid. 801(d)(2)(v).

Although this was quite possibly an unreasonable application of Rule 801, the Court finds that any potential error was harmless.  "[A]n error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)).  Given the inconsequential nature of Sultannah's statements and the substantial evidence against Petitioner, the admission of

---

[5]
 A person commits capital murder if the person commits or attempts to commit aggravated robbery and in the course of and in furtherance of the robbery, the person causes the death of a person under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-10-101.

[6]
 A person commits aggravated robbery if, with the purpose of committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person, and the person is armed with a deadly weapon. Ark. Code Ann. §§ 5-12-102, 5-12-103.

the statement was clearly harmless.  Accordingly, there is no basis for granting Petitioner any habeas relief.

Although the Court has already disposed of claims three through seven, it should be noted that these claims could not have succeeded even if they were not defaulted.  For instance, his argument concerning the trial court's failure to transfer his case to juvenile court is based entirely on state law.  "We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)).  His arguments regarding the admission of the police officer's statement,[7] passing a transcript of his taped statement to jurors,[8] and the prosecutor's closing arguments[9] would have also failed because, if any errors were found, they would amount to harmless errors. *See Fry*, 551 U.S. at 116.   Finally, Petitioner's argument regarding the admission of his statements to the police would have also been rejected because the state courts' rulings on this argument were not contrary to, or unreasonable applications of, clearly established federal law.[10] *Arnold*, 675 F.3d at 1085.

---

[7] During the course of the taped interrogation, an officer stated "I know what happened." Petitioner objected because that officer could not testify at trial and the knowledge was based on hearsay.

[8] A transcript of the interrogation was provided to jurors in order to assist them with the inaudible portions.  Although the circumstances surrounding the creation and verification of the transcript are troubling, Petitioner never alleges that there were any inaccuracies or that he was prejudiced in any way.

[9] During his closing argument, the prosecutor stated, "[l]adies and gentlemen, I urge you, as Mr. Walton did, not to think about Montrell Ventry because that's going to be the lasting image in your mind. Don't let that be."  Petitioner does not argue that he was prejudiced; he only argues that his objection at trial should have been granted.

[10] It is unclear why the Arkansas Supreme Court found that Petitioner's fruit of the poisonous tree argument was not properly preserved for appeal, but this is ultimately unimportant because there was no merit to the argument.

IT IS THEREFORE ORDERED that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 2) be, and it is hereby, dismissed, with prejudice. The relief prayed for is DENIED.

SO ORDERED this 29th day of May, 2012.

_____
United States Magistrate Judge